**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MEGAN ALTWASSER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 21-cv-2524** |
| | ) | |
| **v.** | ) | **Judge Jeffrey I. Cummings** |
| | ) | |
| **AMERICA'S AUTO BODY, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Megan Altwasser brings this action against her former employer defendant America's Auto Body, Inc., claiming that she was subject to disparate treatment and a hostile working environment on the basis of sex, specifically pregnancy, and that she was subject to retaliation for raising concerns about pregnancy discrimination. Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, and the Illinois Human Rights Act, 775 ILCS 5/7A-102(C)(4).[1] Defendant has filed a motion for summary judgment.[2] Dckt. #52. For the reasons stated below, defendant's motion is granted with respect to plaintiff's hostile work environment claim and is otherwise denied.

---

[1] The Court has jurisdiction over Altwasser's Title VII claims under 28 U.S.C. §1331, and supplemental jurisdiction applies to the state-law claims under 28 U.S.C. §1367.

[2] The summary judgment-related filings include: the motion, (Dckt. #52), and the memorandum in support thereof, (Dckt. #53); defendants' Rule 56.1(a)(3) statement of material facts ("DSOF"), (Dckt. #54); plaintiffs' response in opposition to summary judgment, (Dckt. #55), and its accompanying memorandum, (Dckt. #56); plaintiffs' Rule 56.1(b)(3)(c) statement in opposition to DSOF ("DSOF Resp."), (Dckt. #58), and plaintiffs' Rule 56(b)(3)(B) statement of additional facts ("PSOF"), (also Dckt. #57); defendants' reply brief, (Dckt. #60); and defendants' response to PSOF ("PSOF Resp."), (Dckt. #59).

## I.    LEGAL STANDARD FOR CONSIDERATION OF SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), *quoting* Fed.R.Civ.P. 56(c); *see* Fed.R.Civ.P. 56(a); *see also Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016).  "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment *unless* it is a genuine dispute as to a material fact); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004) (issues of material fact are material if they are outcome determinative).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to concoct factual issues.  *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003).  Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009).  Thus, a mere "scintilla of evidence" supporting the non-movant's position does not suffice; there must be evidence on which the jury could reasonably find for the non-moving party.  *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, all facts and reasonable inferences must be drawn in the light most favorable to the non-moving party.  *King v. Hendricks Cnty. Commissioners*, 954 F.3d 981, 984 (7th Cir. 2020); *NES Rental Holdings, Inc. v.*

*Steine Cold Storage, Inc.*, 714 F.3d 449, 452 (7th Cir. 2013).  Ultimately, summary judgment is

granted only if "no reasonable trier of fact could find in favor of the non-moving party."  *Hoppe*

*v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (quotations and citation omitted).

## II.    FACTUAL RECORD

Construed in the light most favorable to Altwasser, the pertinent facts are as follows:

Defendant America's Auto Body, Inc. ("AAB") is an autobody-repair business, owned

and operated by Gerald "Jerry" Wattron ("Wattron").  DSOF ¶5.  AAB specializes in repairing

vehicles that have been involved in accidents and its operating hours are from 6:00 a.m. to 6:00

p.m.  DSOF ¶¶4, 11.  The vast majority of AAB's employees are male.  DSOF ¶8.  AAB did not

maintain any policies relating to job descriptions, performance expectations, discrimination,

harassment, or employee discipline with the exception of a policy governing vacation and sick

days.  PSOF Resp. ¶6.  Moreover, AAB did not have a maternity leave policy.  DSOF ¶38.

Plaintiff Megan Altwasser ("Altwasser") was employed by AAB as a receptionist

between February 2014 and June 19, 2020, when she was laid off.  DSOF ¶¶2, 10, 52.

Altwasser reported to Wattron – who both hired her and laid her off – and production manager

Art Garcia ("Garcia").  DSOF ¶¶10, 12, 31, 52.  In March 2019, AAB hired Wendy Gizynski

("Gizynski") as a second receptionist.  DSOF ¶14.  Altwasser provided training to Gizynski and

worked alongside her.  DSOF Resp. ¶16.  AAB had employed two women as receptionists prior to

the date Altwasser was hired.  DSOF ¶13.

In early September 2019, Altwasser notified Wattron via email that she was pregnant and

intended to work until her due date of November 16, 2019.  DSOF ¶17.  Altwasser did not

respond to or even acknowledge Altwasser's request for maternity leave.  PSOF Resp. ¶7.[3]

---

[3] The cited portion of the record in AAB's response to this paragraph of Altwasser's statement of facts
does not support AAB's assertion that Wattron approved Altwasser's request to take maternity leave.

Prior to informing AAB of her pregnancy, Altwasser had not received any written or verbal disciplinary warnings about her performance. DSOF Resp. ¶53 (citing Dckt. #54-2 (Wattron's deposition) at 14);[4] PSOF Resp. ¶8. Nor had AAB – which did not have a dress code – expressed any issues with Altwasser's work attire. PSOF Resp. ¶5.[5]

Altwasser was required to attend frequent medical appointments throughout her pregnancy because her healthcare provider deemed her pregnancy high-risk. PSOF ¶1. Altwasser would inform AAB by email that she would be out of the office any time she needed to take time off work for a pregnancy-related doctor's appointment. PSOF Resp. ¶2.[6] Although Wattron and Garcia were responsible for approving employees' requests for personal time off, AAB never responded to any of Altwasser's emails on this subject. DSOF ¶19; PSOF Resp. ¶2.

In late October or the beginning of November, 2019, Altwasser sent the AAB Office staff

---

[4] When citing to pages from the depositions submitted by the parties, the Court will cite to the page of the record where the testimony appears rather than to the particular page of the deposition in question that the parties reference. Thus, for example, docket entry 54-2 is the deposition of Wattron and page 14 of the docket entry contains page 46 of Wattron's deposition where he testified that AAB did not issue any written disciplinary warnings to Altwasser prior to her announcement that she was pregnant and that he could not recall whether she had received any verbal disciplinary warnings.

[5] Wattron did buy a sweater for Altwasser prior to her pregnancy announcement but he did so because the sweatshirt she was wearing had holes in it and was way too big for her. PSOF Resp. ¶5. Moreover, early on in Altwasser's tenure with AAB and prior to her pregnancy announcement, Wattron – on his own initiative and without being asked – paid off the remaining balance of Altwasser's student loans and car loans to the tune of over $25,000. DSOF Resp. ¶10.

[6] Altwasser supported this statement of fact with citation to her deposition testimony. AAB objects to her citation to her deposition on the grounds that it is "self-serving" and not supported by other portions of the record. PSOF Resp. ¶2 (citing *Weeks v. Samsung Heavy Industries*, 126 F.3d 926, 939 (7th Cir. 1997)). However, the Seventh Circuit has made it clear that non-moving parties *may* rely on their own uncorroborated and self-serving testimony to defeat summary judgment so long as it is based upon their personal knowledge. *See, e.g.*, *United States v. Funds in Amount of One Hundred Thousand One Hundred & Twenty Dollars ($100,120.00)*, 730 F.3d 711, 717–18 (7th Cir. 2013); *Payne v. Pauley*, 337 F.3d 767, 772–73 (7th Cir. 2003) (same, and distinguishing *Weeks* on the grounds that the nonmovant's affidavit inappropriately speculated as to the defendant employer's state of mind and lacked the specificity required by Rule 56(e)).

an email which stated as follows:

> I would like to keep everyone in the loop, because I don't want anyone to think I'm taking advantage of them. So after reviewing with my doctor if I don't go into labor this weekend or week (mon. 11.4.19 – Fri 11.8.19). My doctor is going to induce me on (Mon 11.11.190 so I will not be in that day or Tues. 11-12-19 if all goes good with me and baby I will be back to work on (Wed 11.13.19), bec[au]se I never got [an] answer about Maternity leave so my plan is to be back on (Wed 11.13.19) with my son unless something goes wrong. But I also will still be under doctor care.
>
> I want to make sure everyone understand[s] what is going on. I don't want to leave anyone out of the loop.

(Dckt. #57-2 at 2). Altwasser began her maternity leave on November 8, 2019. DSOF ¶25.

On or about November 11, 2019, Altwasser received an email from Wattron in which he stated that: (1) he felt "totally taken advantage of"; (2) Altwasser's compensation would be reduced from $30.00 per hour to $28.00 per hour effective November 11; and (3) Altwasser would be required to use a physical timecard to keep track of her hours as opposed to the online timekeeping software the other office employees and she (until that time) had used. PSOF Resp. ¶8; DSOF Resp. ¶43. Despite his opinion that he had been taken advantage of for the preceding seven months, Wattron did not fire Altwasser during this period of time because he "still" considered her to be "an asset." DSOF Resp. ¶53 (*quoting* Dckt. #54-2 at 16).

On December 9, 2019, Altwasser – who was still on maternity leave – received a package from AAB that had her personal belongings in it. DSOF ¶26; DSOF Resp. ¶27. At the time, Altwasser had no idea why her personal belongs had been packed up and mailed to her. DSOF Resp. ¶27. After she received her belongings, Altwasser texted Garcia to tell him that she had received her belonging and to ask him whether that meant she was fired. DSOF ¶31. Although Garcia told her that he had looked into it and confirmed that she was not fired, Altwasser thought she still might have been fired because she needed to hear from Wattron (the owner). DSOF

5

Resp. ¶¶31–33.

On December 13, 2019, Altwasser sent Wattron the following text message:

Jerry.

I'm not sure what is going on but on Monday December 9 I got a package in the mail with all my things inside of it. I'm trying to figure out what is going [on]. I feel like you don't want me at AAB []as a employee cause of my pregnancy, u have gone so far []as to taking me off salary and putting me on hourly. I feel like I'm being discriminated against all cause of me having a child. I need to know if I still have a job.

Also I text Wendy on November 26 asking her to email the office to let them know that I'm still going to be out and that I have dr on December 23 and that I hope she releases me to go back to work.

I have been off work for 4 weeks and next week will be 5 weeks.

Please let me know what is going.

Thanks.

PSOF Resp. ¶9 (*quoting* Dckt. #57-4 at 2–3).

After Wattron did not respond for several days, Altwasser sent Wattron an e-mail on

December 17, 2019, in which she stated that:

On Friday December 13 I text you at 3:17 pm and haven't gotten a response back from you. Has my employment at America's auto body been terminated? I would like to know what is going on.

As my text message stated to you is I'm not sure what is going on but on Monday December 9 I got a package in the mail with all my belongings inside of it. I'm trying to figure out what is going on. I feel like you don't want me at America's auto body []as a employee cause of my pregnancy, u have gone so far []as to taking me off salary and putting me on hourly and cutting my pay. I feel like I'm being discriminated against all because of my pregnancy. I need to know my employment status with the company.

I also text Wendy on November 26 asking her to email the office to let them know that I'm still going to be out and that I have a dr appt on December 23 and that I hope she releases me to go back to work.

I have been off work for 4 weeks and next week will be 5 weeks. Without any pay.

Please advise me as I stated above.

Thank you

PSOF Resp. ¶10 (*quoting* Dckt. #57-5 at 2–3).  Later that day, Wattron responded with a terse, one-sentence email stating: "I guess I'm suppose[d] to stop everything I'm doing because you decided to reach out to me right?" and did not respond to Altwasser's question about her employment status or her concerns of discrimination.  PSOF Resp. ¶10 (*quoting* Dckt. #57-5 at 2).

On December 23, 2019, Altwasser emailed Wattron and informed him that she had been cleared by her doctor to return to work on December 30, 2019.  PSOF Resp. ¶11.  On December 24, 2019, Wattron responded to Altwasser with an email in which he began by stating "Ok, let's try to leave emotion out of this and just look at the facts."  PSOF Resp. ¶12 (*quoting* Dckt. #57-7).  Wattron then explained how much time she would have to spend commuting to and from AAB, how much money she would spend on gas and maintenance to her car, and how much time she would have to spend away from her newborn child.  PSOF Resp. ¶12 (*quoting* Dckt. #57-7).  Next, Wattron presented *his* "alternative" vision for Altwasser's life which would involve her staying home with her newborn child; providing childcare to two additional children for payment in cash; and driving a tow truck or bartending at night for additional cash pay if she did not want to be stuck in the house all week.  PSOF Resp. ¶12 (*quoting* Dckt. #57-7).  Wattron wrapped his email up by stating "When you look at the facts, I'm not sure 'why you would want to work here?'"  PSOF Resp. ¶12 (*quoting* Dckt. #57-7).

On December 27, 2019, Altwasser responded by email and stated: "Let's just get to the point, cause the package I got in the mail pretty much sums it up, so either I have a job or I don't enough for the gameplaying I need to know."  PSOF Resp. ¶13 (citing Dckt. #57-8).  Wattron

responded with the following email later that day:

> NO no no, this is not a game. I'm trying to help you see what is going on in your life.
>
> Are you really prepared to be away from home for 11 hours (8:00 till 7:00 pm) a day with a newborn at home when you can make the same money a lot easier?
>
> Are you ready to focus on your job for 40 hours a week? 52 weeks a year (less vaca[tion] time 16 days).
>
> I just sent you your shit because I got tired of looking at it.
>
> Tell me why you would want to work here?

PSOF Resp. ¶14 (*quoting* Dckt. #57-9).

At some time prior to December 29, 2019, Altwasser filed for unemployment benefits with the Illinois Department of Employment Security ("IDES") because she assumed that she had been fired. DSOF Resp. ¶¶35, 36. However, on December 29, Wattron sent Altwasser an email which led her to understand that she still had a job at AAB and that she would be sitting at the front desk when she returned. DSOF Resp. ¶34. In late December 2019 or early January 2020, AAB submitted a letter to IDES and successfully objected to Altwasser's claim for unemployment benefits on the ground that her employment at AAB had *not* been terminated. DSOF Resp. ¶36. In this letter, AAB also stated that Altwasser's "12 week allowance for maternity leave ends on January 3, 2020." Dckt. #54-16 at 2.

> On February 3, 2020, Altwasser sent Wattron an email in which she stated:
>
> When do you expect me to return back to work? Cause I have to make arrangements for my child. And when I come back to work what will be my pay, will I still [be] on salary $1200.00? And how many hours do you expect me to work?

DSOF Resp. ¶40 (citing Dckt. #54-12). Wattron responded at 5:37 a.m. on February 4, 2020 with an email stating the following:

You can come back to work when you wish, I just need a 3-4 day notice.

Your pay will be $30 a hour, as you know I feel that you totally took advantage of me by getting $1200 a week and rarely putting in 40 hours.

There will be no overtime, you are expected to punch in and out each day and take 60 minutes of br[eak]s. Punching out for br[eak]s. Please don't plan on playing games with this.

Your hours will be just like before 9:00 to 6:00pm.

You are expected to look and act professional. No more fucking around on your phone 3-4 hours a day.

I'm not sure why you want to work here anyway, there have to be a lot of body shops between here and your home.

Fyi, I'm off on holiday, leaving work in one hour, I'll be back next week.

Dckt. #54-8; DSOF Resp. ¶40 (citing Dckt. #54-8).

Altwasser returned to work at AAB on March 2, 2020. DSOF Resp. ¶40. Although her total compensation remained at $1,200 per week, Altwasser's basis for compensation was switched from salary to hourly, she was required to punch in and out on a physical timecard rather than through the online timekeeping software the other office employees used, and her lunch breaks were reduced to 30 minutes even though all other employees were allowed 60-minute lunch breaks. DSOF Resp. ¶¶22, 42–43.

In March 2020, the COVID-19 pandemic negatively impacted AAB's business in because people were not driving as much and the need for vehicle repairs declined as a consequence of the Illinois governor's executive order requiring residents to stay at home. DSOF ¶50. Between March and June 2020, AAB regularly sent Altwasser and Gizynski (the other AAB receptionist) home early because they did not have enough work to do, although Altwasser was sent home disproportionately more than Gizynski. DSOF Resp. ¶51. In May or June 2020, Wattron had conversations with Altwasser where he stated: "wouldn't it be nice" for

her to receive unemployment and monthly stimulus payments while sitting home with her baby. DSOF Resp. ¶54 (citing Dckt. #54-1 at 48). In response, Altwasser told Wattron that although the money would be nice, she had just returned from maternity leave and had no interest in sitting at home. DSOF Resp. ¶54 (citing Dckt. #54-1 at 48).

On June 19, 2020, Wattron laid off Altwasser for the stated reason that AAB's business was down yet he retained Gizynski. DSOF Resp. ¶¶52, 53. Gizynski was never pregnant or affected by pregnancy, childbirth, or other related medical issues during the course of her employment with AAB. PSOF ¶17. Moreover, AAB never changed Gizynski's compensation method from salary to hourly nor required her to use a physical timecard to punch in and out. PSOF Resp. ¶¶8, 17. Altwasser was the only employee who was involuntarily laid off by AAB. PSOF Resp. ¶19.

## III.    ANALYSIS

In her two-count amended complaint, plaintiff alleges that: (1) she was subjected to discrimination in the terms and conditions of her employment because of her pregnancy in violation of Title VII and the IHRA (Count One); and (2) she was subjected to retaliation in violation of Title VII and the IHRA for complaining to AAB that Wattron was discriminating against her based on her pregnancy (Count Two). (Dckt. #43). Within her discrimination count, she sets forth two theories: a disparate treatment claim and a hostile work environment claim. (*See* Dckt. #15) (In denying defendant's motion to dismiss, the Court referenced plaintiff's "detailed allegations on the hostile-work-environment form of the pregnancy-discrimination claim.").

A.    **Plaintiff Presented Sufficient Evidence to Raise a Genuine Issue of Fact as to Whether She Experienced Discrimination in the Form of Disparate Treatment Based on Her Sex/Pregnancy.**

"Title VII of the Civil Rights Act of 1964 forbids a covered employer to 'discriminate against any individual with respect to . . . terms, conditions, or privileges of employment, because of such individual's . . . sex.'" *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 212 (2015), *quoting* 42 U.S.C. §2000e–2(a)(1).  In 1978, Congress enacted the Pregnancy Discrimination Act, 42 U.S.C. §2000e(k), which added new language to Title VII's definitions subsection, specifying that Title VII's "ter[m] 'because of sex' ... include[s] ... because of or on the basis of pregnancy, childbirth, or related medical conditions."  *Young*, 575 U.S. at 212, *quoting* §2000e(k), (otherwise cleaned up).

At the summary judgment stage, the Court "look[s] to see whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [pregnancy] caused the discharge or other adverse employment action."  *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1040 (7th Cir. 2023) (cleaned up); *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).  "Put another way, an unlawful employment practice occurs whenever pregnancy is a motivating factor for an adverse employment action."  *Maldonado v. U.S. Bank*, 186 F.3d 759, 763 (7th Cir. 1999) (cleaned up).  "Generally speaking, there are two ways of proving such a claim: the 'direct' method of proof and the 'indirect' method of proof."  *Hitchcock v. Angel Corps, Inc.*, 718 F.3d 733, 737 (7th Cir. 2013) (cleaned up).

A plaintiff may prove discrimination under a direct, or holistic, method "by proffering 'direct or circumstantial evidence of intentional [pregnancy] discrimination.'"  *Wince*, 66 F.4th at 1040, *quoting Bagwe v. Sedwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 879 (7th Cir. 2016).  Proof under the direct method "'is not limited to near-admissions by the employer that its decisions were based on a proscribed criterion . . . but also includes circumstantial evidence

11

which suggests discrimination through a longer chain of inferences.'" *Atanus v. Perry*, 520 F.3d 662, 672 (7th Cir. 2008), *quoting Luks v. Baxter Healthcare Corp.*, 467 F.3d 1049, 1053 (7th Cir. 2006). Circumstantial evidence demonstrating intentional discrimination includes: (1) suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; (2) evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action. *Teruggi v. CIT Group/Capital Finance, Inc.*, 709 F.3d 654, 659-60 (7th Cir. 2013); *Atanus*, 520 F.3d at 672; *see Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 929 (7th Cir. 2020). The ultimate question remains whether the totality of this evidence, regardless of the type, shows discrimination. *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021).

Alternatively, under the indirect method of proof provided by the *McDonnell Douglas* burden-shifting framework, a plaintiff has "the initial burden to establish a prima facie case of discrimination, after which the burden shifts to the defendant to provide a legitimate justification, before finally shifting back to the plaintiff to establish that such justification was pretextual." *Wince*, 66 F.4th at 1040 (cleaned up). To support a prima facie case, a plaintiff must show that: (1) she is a member of the protected class; (2) she met her employer's legitimate job expectations; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated more favorably. *Id.*

Altwasser asserts that she has sufficient evidence to support a finding in her favor on her disparate treatment claim under both the holistic/direct and indirect methods of proof. Dckt. #56 at 9–16. Because Altwasser has produced sufficient evidence to withstand AAB's motion under

12

the direct/holistic method of proof, the Court need not analyze the evidence under the indirect method of proof.

**1. Altwasser has presented sufficient evidence to allow a jury to find that AAB took at least three adverse employment actions against her.**

To establish her disparate treatment claim under Title VII, Altwasser must show that she was subject to an adverse employment action, which includes "termination or reduction in compensation, fringe benefits, or other financial terms of employment." *Reeves v. Ill. State Police*, 29 F.4th 887, 894 (7th Cir. 2022). Altwasser claims that AAB took at least three adverse employment actions against her based upon her pregnancy: extension of her maternity leave, limiting of her lunch breaks, and termination of her employment.

First, Altwasser asserts that AAB wrongfully extended her unpaid maternity leave from December 30, 2019 (the date when her physician authorized her to return to work) to March 2, 2020 by not notifying her in a timely manner when and what she would need to do to return to work. The record shows that:

(1) In late October or early November 2019, Altwasser sent an email to the AAB office staff (including Wattron) stating her intent to return to work on November 13, 2019 if all went well with the delivery of her baby since she never got an answer about her request for maternity leave;

(2) On December 17, 2019, Altwasser sent Wattron an email in which she expressed her hope that she would be released to return to work after her December 23, 2019 physician's appointment and took note of the fact that she had already been off work for four weeks without pay;

(3) Altwasser notified Wattron on December 23, 2019, that her physician cleared her to return to work on December 30, 2019;

(4) Wattron's 's emails of December 24, December 27, and December 30, 2019, did not inform Altwasser of when and what she would need to do to return from her leave but instead repeatedly questioned why she would want to continue working for AAB;

(5) In late December 2019 or early January 2020, AAB sent a letter to the Illinois Department of Employment Security in which it objected to Altwasser's claim for

unemployment benefits on the ground that she was still employed by AAB and asserted – without notifying Altwasser – that Altwasser's twelve-week maternity leave was scheduled to end on January 31, 2020;

(6) Altwasser sent Wattron a February 3, 2020 email in which she inquired about when she was expected to return to work;

(7) Wattron emailed back on February 4, 2020, at 5:37 a.m. and informed Altwasser that she could return to work when she wanted to *after* providing him with three to four days of notice, and that he was going to be leaving work for a holiday in one hour and would not return until the following week; and

(8) Altwasser did not return to work until March 2, 2020.

A reasonable jury could infer from this evidence that Altwasser would have returned to work on or around December 30, 2019, when she was medically cleared to do so, if Wattron had timely responded to her December 23 email with information about the conditions of her return (namely, three to four days of notice to him). AAB's unnecessary delay in informing Altwasser about the conditions of her return to work caused her an economic injury by extending her unpaid leave, and this constitutes an adverse employment action. *See, e.g.*, *Washington v. Ill. Dep't of Revenue*, 420 F.3d 658, 662–63 (7th Cir. 2005) (change in work schedule was an adverse action when it caused plaintiff to suffer an economic loss by cutting her pay).

Second, Altwasser testified that Wattron limited her to only a thirty-minute lunch break – rather than the sixty-minute lunch breaks that were available to all other employees – after her return from maternity leave.[7] Because Altwasser's compensation remained at $1,200 per month both before and after her leave, Wattron's action in cutting her lunch break in half resulted in Altwasser being forced to work an extra half an hour per day to make the same amount of money. This too is an adverse employment action. *See, e.g.*, *Minor v. Centocor, Inc.*, 457 F.3d

---

[7] Contrary to AAB's assertion, (Dckt. #60 at 8), Altwasser's sworn testimony that she was limited to thirty-minute lunch breaks is sufficient for purposes of summary judgment. *See Payne*, 337 F.3d at 772–73.

632, 634 (7th Cir. 2006) (finding a materially adverse change in terms and conditions of employment where plaintiff suffered an effective reduction in her hourly wage because she was forced to work twenty-five percent more time to earn the same income as before); *Washington*, 420 F.3d at 662–63.

Finally, Wattron's decision to lay Altwasser off on March 2, 2020 was unquestionably an adverse employment action, *see Reives*, 29 F.4th at 894, and AAB does not dispute this proposition.

AAB does assert, however, that Altwasser was no longer a member of the protected class covered by the Pregnancy Discrimination Act at the time she was laid off because her dismissal was too far removed from her pregnancy and the end of her maternity leave. Dckt. #60 at 8-9. It is well-settled that the statute does not require a plaintiff to be pregnant when the alleged adverse action takes place and "the legislative history of the PDA suggests it protects a woman from pregnancy-related discrimination before, during, and after her pregnancy." *Bond v. Sterling, Inc.*, 997 F.Supp. 306, 309 (N.D.N.Y. 1998) (cleaned up); *Griffin v. Sisters of Saint Francis*, 489 F.3d 838, 844 (7th Cir. 2007). Nonetheless, it is also true "that pregnancy differs from most other protected attributes in that it is not immutable because at some point the female employee is no longer affected by pregnancy, childbirth, or related medical conditions." *Campbell v. St. Jude Med., S.C., Inc.*, No. CV 17-944(DSD/DTS), 2018 WL 5779482, at *6 (D.Minn. Nov. 2, 2018) (cleaned up). "At the very least, a plaintiff who is terminated a few months after giving birth *may* be eligible for membership in the PDA's protected class," and whether she continues to be "affected by 'pregnancy, childbirth, or related medical conditions' under Title VII is a question best answered on a case-by-case basis." *Donnelly v. Cap. Vision Servs., LLC*, 644 F.Supp.3d 97, 105 (E.D.Pa. 2022) (emphasis in original) (cleaned up).

15

A woman who was not pregnant during or very near the time when an adverse action is taken against her can demonstrate that she is still within the coverage of the PDA with a showing that might consist of evidence that the employer set out to find a way to dismiss her after learning of her pregnancy, *see Piraino v. Int'l Orientation Res., Inc.*, 84 F.3d 270, 274 (7th Cir. 1996), or that harassment or discriminatory statements by her supervisors began during her pregnancy or maternity leave and continued with some regularity until the adverse employment action occurred, *Donnelly*, 644 F.Supp.3d at 105; *Campbell*, 2018 WL 5779482, at *6–7; *Graham v. Hendrix-ISA, LLC*, No. 5:16-CV-03676, 2017 WL 2547300, at *4 (E.D.Pa. June 13, 2017).

In this case, Altwasser has presented evidence that she was considered an "asset" by Wattron, DSOF Resp. ¶53 (*quoting* Dckt. #54-2 at 16), and that he showed her an uncommon level of solicitude prior to her pregnancy.[8] After she announced her pregnancy, however, the evidence shows that Wattron threatened her with a pay cut, forced her to use a paper timecard to manually punch in and out, unnecessarily delayed her return from her unpaid maternity leave, and cut her lunch break in half. She has also presented evidence that Wattron made discriminatory comments related to her pregnancy, which will be analyzed in more detail below. This evidence "could be viewed by a jury as the culmination of an arc of discrimination that started before she left on maternity leave," and it is sufficient to allow a reasonable jury to find that she was in the PDA's protected class at the time she was laid off. *Graham*, 2017 WL 2547300, at *4; *Campbell*, 2018 WL 5779482, at *7 ("Campbell has credibly supported her theory that her pregnancy triggered a narrative designed to lead to her termination. Before

---

[8] Prior to Altwasser's pregnancy, not only did Wattron spend more than $25,000 to pay off the balance of Altwasser's student loans and car loans and buy her a new sweater on his own initiative, Wattron also gave Altwasser a "break" and authorized her to be paid for 35 days of what would otherwise have been unpaid sick leave. DSOF Resp. ¶23.

Campbell announced her pregnancy, she was highly regarded and . . . [t]hat allegedly changed when she told Hutson and Collier she was pregnant.").

2. **Altwasser has raised a genuine issue of material fact as to whether AAB took adverse employment actions against her based on her pregnancy under the direct/holistic method of proof.**

Altwasser relies on Wattron's emails and statements, which she views as his effort to keep her from returning to work because of the birth of her child, as direct evidence of pregnancy discrimination under the direct/holistic method of proof. In these emails, Wattron expressed irritation and hostility (e.g., "I guess I'm supposed to stop everything I'm doing because you decided to reach out to me right?"; "I just sent you your shit because I got tired of looking at it"; "no more fucking around on the phone"); explained in detail the multiple reasons why – in his view – it would be best for Altwasser to stay at home with her newborn child rather than to return to work at AAB; and questioned why Altwasser would even want to work there. Wattron topped it off shortly before he terminated Altwasser employment by expressing his opinion that it would be nice for her to sit at home with her baby while collecting unemployment and monthly stimulus payments.

The Seventh Circuit has recognized that such statements can constitute circumstantial (or possibly even direct) evidence of pregnancy discrimination. For example, in *Hitchcock v. Angel Corps., Inc.*, the Seventh Circuit held that a supervisor's statements which questioned whether an employee was "quitting" and were made after the supervisor learned of her pregnancy "are at least *circumstantial* evidence of pregnancy discrimination, because they can be a manifestation of precisely the kind of prejudiced belief that the Pregnancy Discrimination Act was designed to combat—the stereotype that women, particularly mothers, belong in the home." 718 F.3d 733,

741 (7th Cir. 2013);[9] *see also Sheehan v. Dolen Corp.*, 173 F.3d 1039, 1044 (7th Cir. 1999) (cleaned up) ("Evidence of discrimination may be direct or circumstantial. Graham's remarks to Sheehan and to her co-workers at the time of the firing that she would be happier at home with her children provided direct evidence of discrimination, evidence which in and of itself suggests that someone with managerial authority was animated by an illegal employment criterion.") & at 1045 ("The circumstantial evidence includes the comments of Sheehan's direct supervisor Eileen Kelm: 'If you have another baby, I'll invite you to stay home.'").

For years now, precedent has been clear: "Basing an employment decision on an employer's notions of how women do or ought to behave—the employer's sex-role stereotypes—is discrimination because of sex." *See Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 930 (7th Cir. 2020) (citing *Hively v. Ivy Tech Comm. Coll. Of Ind.*, 853 F.3d 339, 345–47 (7th Cir. 2017) (en banc)). "The notion that a woman is or ought to be dedicated to family above work is one long-standing such stereotype." *Id.* (citing *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 731, 736 (2003)). A reasonable jury could easily find that Wattron's comments that staying home would be best for Altwasser and her baby reflect this discriminatory stereotyping.

Furthermore, Wattron's abrupt change in treatment towards Altwasser after learning of her pregnancy constitutes additional evidence of his discriminatory animus. *Hitchcock*, 718 F.3d

---

[9] AAB reliance on the Seventh Circuit's decision in *Ilhardt v. Sara Lee Corp.*, 118 F.3d 1151 (7th Cir. 1997), to support its argument that Wattron's emails and comments "do not constitute evidence of pregnancy discrimination" is misplaced. As the *Hitchcock* court recognized, "*Ilhardt* only said that 'statements expressing doubt that a woman will return to work full-time after having a baby do not constitute *direct* evidence of pregnancy discrimination.'" *Hitchcock*, 718 F.3d at 741, *quoting Ilhardt*, 118 F.3d at 1156 (emphasis in *Hitchcock*). In this case, Wattron did not merely express doubt about whether Altwasser would return to work after giving birth; instead, he repeatedly tried to discourage her from doing so and pointed to the benefits that he saw for her life if she stayed home with her baby. Moreover, in *Ilhardt*, unlike here, the plaintiff's supervisor made the decision to terminate the plaintiff *before* he knew that she was pregnant. *Ilhardt*, 118 F.3d at 1156.

at 741–42.  Altwasser has also shown that a similarly situated non-pregnant employee (Gizynski) received systematically better treatment from Wattron after Wattron learned that Altwasser was pregnant.  In particular, Gizynski enjoyed a full hour for her lunch breaks, she was not forced to manually punch in and out with a timecard, she was sent home early less frequently than Altwasser when work was slow, and she was retained despite having less experience at AAB when Wattron laid Altwasser off.  *Teruggi*, 709 F.3d at 659–60 (noting that evidence that a similarly situated employee outside of the protected class was treated more favorably is circumstantial evidence under the direct/holistic method of proof).

AAB does not dispute this evidence regarding Gizynski's treatment.  Instead, it points to the fact that another employee (the office manager Denise Glos) continued to work at AAB without incident after two maternity leaves, (DSOF Resp. ¶7), and it asserts that this evidence defeats Altwasser's case.  (Dckt. #53 at 12) ("It goes against reason to infer that Wattron was discriminating against Altwasser because of her pregnancy when one of his female employees continued to work at AAB while pregnant without incident.").  The Supreme Court has rejected such reasoning in *Connecticut v. Teal*, explaining that "[i]t is clear that Congress never intended to give an employer license to discriminate against some employees on the basis of race or sex merely because he favorably treats other members of the employees' group."  457 U.S. 440, 455 (1982); *see also Diaz v. Kraft Foods Glob., Inc.*, 653 F.3d 582, 587 (7th Cir. 2011) ("Title VII would have little force if an employer could defeat a claim of discrimination by treating a single member of the protected class in accordance with the law.").

Finally, Altwasser has presented sufficient evidence to raise a genuine issue of fact as to whether the reason that Wattron's stated reason for laying off and not Gizynski (namely, because Gizynski was a "better employee") is pretextual.  *Joll*, 953 F.3d at 929 ("types of circumstantial

evidence that will support an inference of intentional discrimination [includes] dishonest employer justifications for disparate treatment.").  Pretext means a lie –specifically, a phony reason for some action – and it can be proven, among other ways, by evidence showing that the employer's explanation: (1) had no basis in fact; (2) was not the real reason; or (3) was insufficient to warrant the adverse employment action.  *Sanchez v. Henderson*, 188 F.3d 740, 746 (7th Cir. 1999); *James v. Sheahan*, 137 F.3d 1003, 1007 (7th Cir. 1998).

Altwasser has presented sufficient evidence to raise a disputed issue of fact as to whether AAB's reason for her layoff was pretextual.  To begin, Wattron – who made discriminatory comments/statements regarding Altwasser's pregnancy – provided no explanation as to *why* he considered Gizynski to be a better employee than Altwasser.  DOF Resp. ¶53.  Next, Altwasser – who trained Gizynski – received no written or verbal disciplinary warnings about her performance prior to her layoff.  Furthermore, although Wattron was aware of Altwasser's alleged performance issues (i.e., her use of her cell phone for non-work-related issues, her workplace attire, and her alleged failure to work a full 40-hour week) *prior* to her pregnancy announcement, he considered her an "asset" to AAB who was not subject to termination at that time.  DSOF Resp. ¶53 (citing Dckt. #54-2 at 16).  Finally, the record contains no evidence as to the nature of Altwasser's performance at the time she was laid off following her maternity leave. *See Vichio v. US Foods, Inc.*, 88 F.4th 687, 692 (7th Cir. 2023) ("our inquiry focuses on an employee's conduct at the time [s]he was terminated.").

For all these reasons, the Court finds that Altwasser has presented sufficient evidence that would allow a reasonable jury to find that AAB took one or more adverse actions against her based upon her pregnancy.

**B.    Altwasser Has Abandoned Her Hostile Work Environment Claim**

In its motion for summary judgment, AAB asserts that Altwasser's hostile work environment claim is fatally undermined by her testimony that Wattron treated other nonpregnant AAB employees in a hostile manner and subjected her to the same type of hostile treatment before she became pregnant.  (Dckt. #53 at 10).  Altwasser does not respond to AAB's argument or even mention her hostile environment claim in her response brief, let alone argue that summary judgment should not be granted as to this claim.  Accordingly, the Court finds that she has abandoned her hostile work environment claim.  *See, e.g.*, *Kovaco v. Rockbestos-Surprenant Cable Co.*, 834 F.3d 128, 142–44 (2d Cir. 2016); *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 374 n.2 (7th Cir. 2020) (citation omitted); *ARJN #3 v. Cooper*, 517 F.Supp.3d 732, 750 (M.D.Tenn. 2021).

**C.    Plaintiff Presented Sufficient Evidence to Raise a Genuine Issue of Fact as to Whether She Faced Retaliation for Raising Concerns About Pregnancy Discrimination.**

Finally, Altwasser asserts that AAB retaliated against her in violation of Title VII and the IHRA after she complained of pregnancy discrimination by unnecessarily extending her unpaid maternity leave, chopping her lunch break in half, and laying her off.  As with her substantive discrimination claims, Altwasser can establish her retaliation claims by either the direct/holistic or the indirect burden-shifting methods of proof.  *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018); *Benuzzi v. Board of Educ. of City of Chicago*, 647 F.3d 652, 664 (7th Cir. 2011).  Under the direct/holistic method, plaintiff must produce evidence from which a reasonable jury could conclude that: (1) she engaged in a statutorily protected activity; (2) she suffered a materially

adverse action by AAB; and (3) there was a causal link between the two.  *Id.*  In its motion, AAB argues that Altwasser cannot prove her termination was retaliatory.[10]

AAB does not dispute that Altwasser engaged in statutorily protected conduct when she raised concerns of pregnancy discrimination in her emails to Wattron.  Nor does AAB dispute that Wattron's decision to layoff Altwasser was a materially adverse action.  Instead, AAB asserts that Altwasser cannot show a causal connection between her protected conduct and her layoff because there is no evidence that she engaged in protected conduct at or near the time of her layoff.[11]  In particular, AAB asserts that the six-month time period between when Altwasser complained about pregnancy discrimination and the date she was laid off is "fatal to her retaliation claim."  (Dckt. #60 at 10).  Not so.

The Seventh Circuit has held that "'[t]he mere passage of time is not legally conclusive proof against retaliation.'"  *Malin v. Hospira, Inc.*, 762 F.3d 552, 559 (7th Cir. 2014), *quoting Robinson v. Se. Pennsylvania Transp. Auth., Red Arrow Div.*, 982 F.2d 892, 894 (3d Cir. 1993); *Lesiv v. Illinois Cent. R.R. Co.*, 39 F.4th 903, 920 (7th Cir. 2022) ("Lesiv points out correctly that a plaintiff can sometimes establish causation despite a substantial delay between the protected activity and the adverse action."); *Carlson v. CSX Transp. Inc.*, 758 F.3d 819, 829 (7th Cir. 2014) ("no bright-line timing rule can be used to decide whether a retaliation claim is plausible or whether it should go to a jury.").  As the *Malin* court explained:

> A mechanistically applied time frame would ill serve our obligation to be faithful
> to the legislative purpose of Title VII.  The facts and circumstances of each case

---

[10] To the extent AAB also challenges the viability of Altwasser's other proffered adverse actions on the grounds they are not sufficiently adverse, the Court disagrees for the reasons discussed in Section A(1) above.  Because these actions could meet the adverse employment action standard for a discrimination claim, they too can satisfy the lower "materially adverse action" standard for a retaliation claim.  *See Lewis v. Wilkie*, 909 F.3d 858, 867 (7th Cir. 2018).

[11] AAB also asserts that Altwasser cannot show that Wattron's reason for selecting her (and not Gizynski) for layoff was pretextual. That argument has been addressed in Section A(2) above.

> necessarily must be evaluated to determine whether an interval is too long to permit
> a jury to determine rationally that an adverse employment action is linked to an
> employee's earlier complaint. The inference of causation weakens as the time
> between the protected expression and the adverse action increases, and then
> additional proof of a causal nexus is necessary. Thus, we have permitted retaliation
> charges to proceed in the face of long intervals only when additional circumstances
> demonstrate that an employer's acts might not be legitimate.

*Malin*, 762 F.3d at 560.

In *Malin*, the Seventh Circuit held that evidence that the defendant repeatedly retaliated against the plaintiff during the three-year period between when she complained of discrimination and when she was demoted was sufficient circumstantial evidence to bridge the gap between the two events, leaving the issue of causation for the jury to decide at trial. *Id.*, at 560–61; *Miranda v. Auto Wares Grp. Of Companies*, No. 13 C 02321, 2015 WL 274173, at *6–7 (N.D.Ill. Jan. 20, 2015) (citing *Malin* and holding that plaintiff had "pointed to other instances of retaliatory behavior" between her initial advocacy in March 2010 and her eventual firing in November 2011 to raise a genuine dispute of material fact as to causation); *Pinkett v. Apex Commc'ns Corp.*, No. 1:08CV790(JCC), 2009 WL 1097531, at *5 (E.D.Va. Apr. 21, 2009) ("Evidence of continuing retaliatory conduct and animus directed at the plaintiff by the defendant during the intervening period can satisfy the element of causation.").

In this case, as explained above in Section III(A)(1), Altwasser has presented evidence that she was subject to a number of adverse and hostile actions between the time when she made her complaints of pregnancy discrimination and when Wattron laid her off that a reasonable jury could find were retaliatory. Altwasser's showing of causation is bolstered by evidence that: (1) another AAB employee (Denise Glos) who took two maternity leaves *without* making any complaint of pregnancy discrimination was able to complete her leaves and return to work at AAB without suffering any adverse consequences; and (2) Wattron's explanation for his decision

to layoff Altwasser (and not Gizynski) was pretextual. *See Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) ("In the Title VII retaliation context, causation can be established by circumstantial evidence, which includes, for example, suspicious timing, a pretextual explanation for the termination, and evidence that similarly situated employees were treated differently.") (cleaned up).

For these reasons, the Court finds that Altwasser has presented sufficient evidence to allow her retaliation claims to proceed to the jury and summary judgment on these claims must be denied.

## CONCLUSION

For the above reasons, defendants' motion for summary judgment, (Dckt. #52), is granted as to plaintiff's hostile work environment claim and is otherwise denied.

**Date: April 25, 2024**

**Jeffrey I. Cummings**
**United States District Court Judge**

24